COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss

SUPERIOR COURT
BUSINESS LITIGATION SESSION
CIVIL DOCKET NO.

| | |
|---|---|
| ALTON "LEE" MILES, III, | ) E-FILED 6/18/2021 |
| Plaintiff, | ) |
| v. | ) |
| PETER J. CAMBS JR. and KURT FESHBACH, | ) |
| Defendants. | ) |

## COMPLAINT

### I.   INTRODUCTION

1.   Massachusetts-based employee, Alton "Lee" Miles, III
("**Miles**"), asserts this action against his former
employers, the Defendants Peter J. Cambs Jr.
("**Cambs**") and Kurt Feshbach ("**Feshbach**").

2.   The Defendants hired Miles to perform equity research
and write investment recommendations with an hourly
pay rate and maximum amount per report.  The
Defendants have failed and refused to pay Miles
anything for his work and instead have unlawfully
detained his wages.

3.    Among other claims set forth below, Cambs and

Feshbach have violated the Massachusetts Wage Act,

breached an employment agreement and committed

fraud.

4.    By letter dated May 19, 2021, attached as **Exhibit A**,

the Massachusetts Attorney General has granted the

Plaintiff authorization to commence suit against Cambs.

5.    By letter dated May 19, 2021, attached as **Exhibit B**,

the Massachusetts Attorney General has granted the

Plaintiff authorization to commence suit against

Feshbach.

## II.    PARTIES

6.    Miles is a resident of Dover, Massachusetts.  He worked

for the Defendants from July 2019 to December 2019.

7.    Cambs is a resident of New York.

8.    Feshbach is a resident of Florida.

## III.   JURISDICTION AND VENUE

9.    This case is appropriate for the Suffolk County

Superior Court Business Litigation Session ("**BLS**")

because the claims relate to an employment

agreement involving a business relationship

pertaining to financial analysis, involve claims of

fraud and breach of contract, and will require substantial case management.

10. This Court has personal jurisdiction over the Defendants pursuant to Mass. Gen. Law Ch. 223A, § 3, in that the Defendants transacted business relating to the subject matter of this lawsuit in the Commonwealth of Massachusetts.

## IV.  STATEMENT OF FACTS

11. Miles is a *Magna cum Laude* graduate of Harvard University with Highest Honors in Engineering.  He also possesses an MBA from the Wharton Business School.  He received his MBA with Distinction in Finance and Operations and was in the top 5% of his class at Wharton.  He has over ten years of experience in equity research at prominent investment firms including Fidelity Investments, AllianceBernstein, Baird and KCG.

12. Miles has published stock picks in multiple sectors that generated significant outperformance/"alpha" on both "long" and "short" positions.  This means his buy recommendation ("**long**") stock picks have

outperformed benchmarks on average by rising more than the benchmark stock market index. Likewise, his sell recommendation ("**short**") stock picks have, on average, underperformed (gone down more or gone up less than) the benchmark stock market index. Miles's stock recommendations have, on average, made money for clients on both the buy and sell recommendations.

13. Cambs emailed Miles on June 25, 2019, seeking to hire Miles to work on long/short idea generation, equity research and writing equity research reports.

14. Shortly after that email, Cambs and Feshbach interviewed Miles.  The parties agreed that Miles would begin researching SVB Financial Group (stock ticker "**SIVB**"), a company that Cambs and Feshbach had selected as a potentially attractive short investment opportunity.  The parties also agreed, provided Cambs and Feshbach were satisfied with the work product Miles delivered on SIVB, that the Defendants would hire Miles for future work and compensate him for future and past work on agreed terms.

4

15.   Miles spent over 27 hours researching the company
      and creating work product including an investment
      thesis outline. Miles provided his research results to
      them on or about July 22, 2019, in an email and over
      a detailed phone conference call.

16.   On July 22, 2019, Cambs emailed Miles and asked
      Miles to start researching another company, Tiffany
      & Company (stock ticker "**TIF**").  Cambs also made
      clear that the Defendants did indeed want to hire
      Miles and compensate him.  Cambs stated, for
      example, "we're happy to start compensating you for
      this" and "we're definitely not expecting you to work
      for free."

17.   Early in the TIF research process in July 2019, the
      parties agreed that Cambs and Feshbach would pay
      Miles $300 per hour for initiation reports that were
      ultimately published, with a maximum of $35,000 per
      initiation report, and $300 per hour for additional
      incremental work on published companies beyond the
      initiation report.  They further agreed on the lower
      rate of $250 per hour if the work was not ultimately
      sent to a client. The parties verbally agreed that

5

these payment terms would be retroactively applied
to the prior work Miles did on SIVB. Miles accepted
the Defendants' offer of employment on these terms.

18. Miles spent over 175 hours on his Tiffany research.
That productive research resulted in a 28-page
research report which was published to numerous
clients/potential clients on or about August 14, 2019.
Cambs and Feshbach expressed deep satisfaction and
even delight with the high quality of Miles's research
report in both conference calls and emails.

19. Miles also provided research on a variety of other
companies at the request of Cambs and Feshbach.

20. The parties agreed that Feshbach and especially
Cambs would perform a client sales role while Miles
performed a research and content creation role.

21. The original payment timing terms the parties
agreed to were that the Defendants would pay Miles
25% of the hourly fees within two weeks after
receiving a spreadsheet invoice and that they would
pay Miles the remaining 75% no later than a few
weeks thereafter.

22. In addition to the hourly payment terms, the parties

also negotiated and agreed that the Defendants
would grant Miles a one-third ownership stake in a
business that Miles later learned was Center Lake
Research, LLC ("**Center Lake**").  The Defendants
breached this promise too; they never granted him
the agreed ownership stake in Center Lake.  Indeed,
Feshbach later confirmed in writing that Miles never
owned any interest in Center Lake or any other
entity affiliated with the Defendants.

23.   Center Lake is a Florida limited liability company
that is based out of a building that Feshbach has
claimed he owns.  Feshbach and Cambs told Miles
that they each own one-half of Center Lake.

24.   Moreover, both Feshbach and Cambs controlled,
directed, and participated to a substantial degree in
formulating and determining policy and business
activities for Center Lake.  Among other examples of
this authority, they each exercised hiring and firing
discretion for Center Lake and directed all of its
strategic activities.  Cambs and Feshbach also
controlled and directed the selection of the companies
on which Miles did research and the projects on

7

which Miles worked.

25.     When the parties reached a meeting of the minds on the employment arrangement, Cambs and Feshback promised Miles they would be personally liable for any wages owed to Miles.  Only later, when the Defendants made clear their intention to unlawfully detain Miles's wages, did they begin to construct the false narrative that Miles was an employee of Center Lake.

26.     Miles completed work on the first assignment prior to the agreement of payment terms (as the negotiations were ongoing then), but the agreement retroactively covered the first assignment.

27.     The parties discussed, negotiated and expressly agreed that Cambs and Feshbach would pay Miles as promised regardless of whether Cambs and Feshbach were able to secure any paying clients. In other words, Miles bore no revenue risk at that time.

28.     Cambs and Feshbach never disputed Miles's hours worked, tasks done, or quality of work in any email exchanges or phone conversations. In fact, they repeatedly expressed significant satisfaction and even

delight with the work Miles did and the time it took Miles to do that work. In other words, the defendants never disputed the invoices or amounts owed either verbally or in writing.

29.     Under the original payment terms, Miles researched several companies including those with the stock symbols SIVB, TIF, FOXF, OLLI, DENN, CZZ and others. That research led to the following products being sent to clients: 1) a 28-page TIF research report Miles wrote; 2) an approximately 20-page OLLI research report on which Miles worked and to which he contributed; 3) a 16-page DENN research report on which Miles worked and to which he contributed; 4) Multiple maintenance/update reports about companies on which the parties had previously-published initiation reports; and 5) custom research and emails at Cambs's request for a particular potential hedge fund client.

30.     On September 13, 2019, after Cambs and Feshbach expressed concern about their rising unpaid wage obligations to Miles, Miles volunteered to bear a modest amount (but not all) of the future client

revenue risk. The parties discussed modifying Miles's employment agreement going forward in that Miles would bear some of the client revenue risk with a potential modest discount to the previously-agreed hourly rate, depending in part on client revenues Cambs and Feshbach were able to secure. However, the parties intended to engage in future negotiations about the size of the modest discount. They ultimately never reached a meeting of the minds on this modification.

31. This modification did not impact the agreement of Cambs and Feshbach to pay Miles $56,960 for the work he completed prior to September 13, 2019. The Defendants owe Miles at least $65,000 in wages for his work after September 13, 2019.

32. The work that Miles did after September 13, 2019, included researching companies with the stock symbols AXL, AYX, BBY, CVNA, DENN, GOOS, OLLI, SDC and TIF among others and publishing 55 pages of initiation reports that Miles either wrote or helped write as well as many other pages of update reports. These reports included initiation reports on

AYX, DENN and SDC. Miles also screened numerous stocks and became actively involved in finding potential new clients. Overall, Miles worked far more hours for Cambs and Feshbach after September 13, 2019 than he had prior to then.

33. Shortly after Miles completed a major assignment, he sent a spreadsheet invoice to Cambs and Feshbach for payment on all work done through the completion of that major assignment.  The spreadsheet showed the hours he worked in connection with each company project, the hourly payment rate, and descriptions of what he did during the time worked. Cambs and Feshbach never disputed the invoice spreadsheets Miles provided or expressed any disagreement with the hours Miles worked. Miles emailed the spreadsheet invoices to Cambs and Feshbach multiple times, including on September 3, 2019, December 17, 2019, and May 7, 2020, as examples.

34. Miles worked remotely for the Defendants.  He completed most or substantially all of his work from Massachusetts, where he resides, except for a Tiffany

11

research trip to Tiffany's flagship store in New York City.

35. Throughout the parties' relationship, Cambs and Feshbach each made multiple promises to pay Miles what they owed him, even if it was out of their personal assets and/or their other businesses.

36. Feshbach and especially Cambs gave Miles several significant positive reports (verbally and via email) on the strong likelihood of getting meaningful revenue from likely clients. It appears Cambs may have been purposefully misleading Miles by presenting a false and overly optimistic outlook in order to fraudulently induce Miles to continue to work for him and Feshbach.

37. In November 2019, Cambs and Feshbach asked Miles to expand his role and help find new clients as well as generate content of stock recommendations and research reports. Miles agreed to help.  He explored and recommended forming a partnership with Kailash Capital ("**Kailash**"), run by former work colleagues of Miles. This potential partnership might have enabled Cambs, Feshbach and Miles to cross-

sell research to the significant number of clients that Kailash Capital already had. Miles told Cambs and Feshbach of the potential synergies of Center Lake Research partnering with Kailash. In December 2019, Cambs reported that he received a job offer and would be leaving Center Lake Research shortly. Feshbach balked at partnering with Kailash and later indicated that he would be continuing Center Lake Research without the involvement of Cambs or Miles.

38.   Feshbach and Cambs eventually had a falling out.  In May 2020, after his relationship with Feshbach had soured, Cambs reached out to Miles via phone and email to negotiate a payment seeking to settle his debt to Miles. However, after having acknowledged the personal debt multiple times to Miles, Cambs sent an email to Miles on May 15, 2020, ultimately refusing to pay Miles the debt owed and referring Miles to Cambs's attorney.

39.   Cambs and Feshbach have never paid Miles for any of the work he performed for their benefit and at their request.

40.   The total amount of wages the Defendants owe Miles, before Wage Act trebling and attorney fee-shifting is at least $122,000. The Defendants also owe Miles approximately $2,000 in travel expense and expense reimbursement.  $122,000 for approximately six months of work (about $250,000 annualized) is similar to Miles's $250,000 annual salary at his last employer, Off Wall Street, and about half of Miles's historical annual pay at Fidelity and KCG as shown in Miles's W-2 tax statements.

41.   Miles exchanged hundreds of emails with Cambs, Feshbach and another employee of Feshbach in the last half of 2019 while working for them. These emails represent significant evidence of the amount and nature of the work that Miles did for Cambs and Feshbach as well as their satisfaction or even delight with the work.

## **COUNT I**

### **Violation of Massachusetts Wage Law**

42.   Miles hereby incorporates all the foregoing paragraphs as if fully set forth herein.

43.   Cambs and Feshbach, as employers subject to G.L. c.

14

149, § 148, violated the statute by failing to timely pay their employee, Miles, and have illegally detained his wages.

## COUNT II

### Unjust Enrichment

44. Miles hereby incorporates all the foregoing paragraphs as if fully set forth herein.

45. As a result of the Defendants' conduct in detaining the Plaintiff's wages, the Defendants have been unjustly enriched to the detriment of Miles in violation of the common law of Massachusetts.

## COUNT III

### Quantum Meruit

46. Miles hereby incorporates all the foregoing paragraphs as if fully set forth herein.

47. Miles has been deprived by Cambs and Feshbach of the fair value of his services, as described above, and is, therefore, entitled to recover in *quantum meruit,* the value of his services pursuant to the common law of Massachusetts.

## COUNT IV

### Promissory Estoppel

48.  Miles hereby incorporates all the foregoing paragraphs as if fully set forth herein.

49.  Cambs and Feshbach made representations intended to induce reliance on the part of Miles.  Miles acted in reasonable reliance on those representations.  Miles is at a detriment because of his reasonable reliance on their representations.

## COUNT V

### Fraud

50.  Miles hereby incorporates all the foregoing paragraphs as if fully set forth herein.

51.  The Defendants made false statements and misrepresentations to Miles concerning their intent to pay him for his work, as set forth above.

52.  For example, Cambs stated in an email on July 22, 2019, "we're happy to start compensating you for this as we're definitely not expecting you to work for free."

53.  The Defendants and Miles developed a detailed payment system.  Miles was to be paid $300 per hour

for initiation reports that were ultimately published, with a maximum of $35,000 per initiation report, and $300 per hour for additional incremental work on published companies beyond the initiation report. The rate was to be lowered to $250 per hour if the work was not ultimately sent to a client. The timing terms were that 25% of the amount was to be paid within two weeks of receiving the spreadsheet invoice and the remaining 75% was to be paid within an additional few weeks.

54. Modification of the agreement took place on September 13, 2019, which Miles documented in an email to the Defendants. Feshbach thanked him for the documentation.

55. Miles reasonably relied to his detriment on their false statements and misrepresentations by working for the Defendants from July 2019 to December 2019 without receiving any compensation.

56. As the intended, direct and proximate result thereof, Miles was harmed and continues to suffer, for which the Defendants are liable.

57. Miles was damaged by their fraudulent

representations and conduct.

## COUNT VI

### Account Stated

58.   Miles hereby incorporates all the foregoing paragraphs as if fully set forth herein.

59.   Cambs and Feshbach have a debtor-creditor relationship with Miles.

60.   Miles presented invoices to Cambs and Feshbach in the form of spreadsheets.

61.   Cambs and Feshbach accepted the amount due as correct.

62.   Cambs and Feshbach promised to pay the amount to Miles.

63.   Cambs and Feshbach failed to pay the amount to Miles.

## COUNT VII

### Breach of Contract

64.   Miles hereby incorporates all the foregoing paragraphs as if fully set forth herein.

65.   The parties formed one or more binding contractual agreements including the elements of offer, acceptance and consideration.

18

66.   The Defendants breached the contract or contracts

causing damages to the Plaintiffs.

## COUNT VIII

**Breach of the Implied Covenant of Good Faith
and Fair Dealing**

67.   Miles hereby incorporates all the foregoing

paragraphs as if fully set forth herein.

68.   It is implied in the contract or contracts the parties

formed that the parties would deal with each other

honestly, fairly, and in good faith, so as to not destroy

the right of the other party or parties to receive the

benefits of the contract.

69.   The Defendants' actions and omissions have violated

their duties of good faith and fair dealing and have

thereby harmed the Plaintiff.

## JURY DEMAND

**THE PLAINTIFF REQUESTS A TRIAL BY JURY ON ALL
CLAIMS.**

WHEREFORE, Plaintiff requests this Honorable Court to:

i.    Issue a judgment in his favor on all his claims;

ii.   Grant the Plaintiff all appropriate relief as provided by law,
including treble damages, attorney's fees, interest, and costs.

Respectfully submitted,

ALTON "LEE" MILES,

By his attorneys,

Stefan L. Jouret, BBO # 656196
Julia W. Holliday, BBO # 678987
JOURET LLC
Two Center Plaza, Suite 610
Boston, MA 02108
(617) 523-0133 (main)
(617) 507-2576 (facsimile)
jouret@jouretLLC.com
holliday@jouretLLC.com

Dated:  June 18, 2021

# EXHIBIT A



THE COMMONWEALTH OF MASSACHUSETTS

OFFICE OF THE ATTORNEY GENERAL

ONE ASHBURTON PLACE
BOSTON, MASSACHUSETTS 02108

MAURA HEALEY
ATTORNEY GENERAL

(617) 727-2200
(617) 727-4765 TTY
www.mass.gov/ago

May 19, 2021

Attorney Stefan Jouret
Jouret LLC
2 Center Plaza, Suite 610
Boston, MA 02108

RE:     Alton "Lee" Miles
        Request for Private Right of Action against Peter J Cambs

Dear Attorney Jouret:

Thank you for contacting the Office of the Attorney General's Fair Labor Division.

Massachusetts General Laws Chapter 149, § 150, and Chapter 151, §§ 1B and 20 establish a private right of action for employees who believe they are victims of certain violations of the state wage laws.

This letter is to inform you that we are authorizing you to pursue this matter through a private civil lawsuit.  If you elect to sue in civil court, you may bring an action on your own or your clients' behalf, and on behalf of other similarly situated workers.

This office will not pursue an investigation or enforcement at this time.

Sincerely,

Fair Labor Division
Office of Attorney General Maura Healey
(617) 727-3465

# EXHIBIT B



# THE COMMONWEALTH OF MASSACHUSETTS
## OFFICE OF THE ATTORNEY GENERAL
### ONE ASHBURTON PLACE
### BOSTON, MASSACHUSETTS 02108

MAURA HEALEY
ATTORNEY GENERAL

(617) 727-2200
(617) 727-4765 TTY
www.mass.gov/ago

May 19, 2021

Attorney Stefan Jouret
Jouret, LLC
2 Center Plaza, Suite 610
Boston, MA 02108

RE:    Alton "Lee" Miles
       Request for Private Right of Action against Kurt Feshbach

Dear Attorney Jouret:

Thank you for contacting the Office of the Attorney General's Fair Labor Division.

Massachusetts General Laws Chapter 149, § 150, and Chapter 151, §§ 1B and 20 establish a private right of action for employees who believe they are victims of certain violations of the state wage laws.

This letter is to inform you that we are authorizing you to pursue this matter through a private civil lawsuit. If you elect to sue in civil court, you may bring an action on your own or your clients' behalf, and on behalf of other similarly situated workers.

This office will not pursue an investigation or enforcement at this time.

Sincerely,

Fair Labor Division
Office of Attorney General Maura Healey
(617) 727-3465